UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN O'MALLEY,                                         CASE NO. 08-11595
                                                      HON. LAWRENCE P. ZATKOFF
          Plaintiff,

vs.

CITY OF FLINT and GARY
HAGLER, Acting Police Chief,

          Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 10th day of July, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on separate Motions for Summary Judgment filed by
Defendant City of Flint (the "City") (Docket #22) and Defendant Gary Hagler ("Hagler") (Docket
# 23).  Plaintiff has filed a response to each Motion for Summary Judgment, and a reply to each
response has been filed with the Court.  The Court finds that the facts and legal arguments pertinent
to the Motions for Summary Judgment are adequately presented in the parties' papers, and the
decision process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R.
7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this
Court entertaining oral arguments.  For the reasons that follow, the City's Motion for Summary
Judgment is GRANTED and Hagler's Motion for Summary Judgment is GRANTED IN PART and
DENIED IN PART.

## II. BACKGROUND

This action stems from events that occurred on Thursday July 27, 2006, at approximately 12:50 p.m.  At that time, Hagler (then the acting Chief of Police for the City) was on duty, in full uniform, and driving an unmarked City vehicle.  While on the road, Hagler observed a blue Chevrolet Tahoe traveling northbound on Hammerberg Road within the City.  Although the Tahoe looked like a Michigan State Police ("MSP") vehicle (and it had, in fact, been a MSP vehicle before Plaintiff purchased it at an auction), this Tahoe did not have a municipal license plate, an overhead light bar or door decals depicting the traditional MSP "shield" or "emblem."  The Tahoe did have a large, mounted "whip-like" antenna, an emergency vehicle push-bar, "Call 911" decals on the rear quarter panels, red emergency-type lights in the rear window with corresponding tinting cut out of the otherwise completely tinted rear window, and the number "47" stenciled in white on the rear tailgate.  Each of these features corresponds to the manner in which a MSP vehicle of that type (a Tahoe) is outfitted.

Hagler claims he was suspicious that someone was using the Tahoe to masquerade as an officer of the law, in violation of M.C.L. § 750.215.  As Hagler followed the Tahoe, he contacted the MSP's Flint Post on his cellular phone and asked the desk officer whether the MSP had a vehicle in the area that matched the license plate and description of the Tahoe.  The MSP desk officer responded that the MSP did not have such a vehicle in its fleet, and he remained on the line while Hagler continued to follow the Tahoe.  Hagler did not observe Plaintiff commit any traffic infractions before Plaintiff pulled into the driveway of a residence located at 2301 Reid Street, Flint, Michigan.  Plaintiff, a Caucasian male, stepped out of the vehicle and walked toward the backyard of the residence.   Hagler pulled into the same driveway, notified the MSP desk officer of his location and exited his vehicle.

Although Hagler was in full uniform, he identified himself to Plaintiff as a police officer and told Plaintiff that he wanted to speak to him.  Plaintiff then began walking back toward Hagler.  As Plaintiff approached Hagler, Plaintiff asked Hagler what was going on as he had done nothing

2

wrong.  Plaintiff also stated that (1) he had a gun on the front, passenger seat underneath a T-shirt, (2) he possessed a CCW (carrying concealed weapon) permit, and (3) he was a security guard. Hagler then placed Plaintiff in handcuffs and communicated with the MSP desk officer.  The MSP desk officer requested that Hagler remain on the line while the MSP desk officer notified the City's Police Department to send backup units.  Plaintiff remained in handcuffs on the hood of Hagler's vehicle until backup units began arriving, almost immediately.

Officer Connie Johnson was the first on the scene and other City officers, including Officer Tom L. Snyder, Officer Kris Blinkilde and Captain Scott Sutter, arrived shortly thereafter.  Upon their arrival, Officer Johnson and another officer placed Plaintiff in the back of her cruiser.  Once Plaintiff was placed in Officer Johnson's cruiser, Plaintiff asked her to loosen his handcuffs.  Officer Johnson refused to loosen Plaintiff's handcuffs.  Once Officer Johnson arrived on the scene, Hagler had no further contact with Plaintiff.  Instead, Hagler asked the officers on the scene to: (a) search Plaintiff's vehicle for Plaintiff's gun and any additional passengers, (b) verify lawful ownership of the vehicle and the validity of the CCW permit, and (c) run Plaintiff through the Law Enforcement Information Network ("LEIN").

While the search of the vehicle was being conducted, the LEIN check yielded a traffic warrant for Plaintiff's arrest out of the Warren (Michigan) Police Department.  Upon learning of the warrant, Hagler instructed Officer Johnson to transport Plaintiff to the Flint Police Department for pick up by the Warren Police Department.  Hagler then left the scene.  Thereafter, an officer from the Warren Police Department advised Hagler that Warren had mistaken Plaintiff for another individual and that the Warren Police Department did not have a warrant outstanding for Plaintiff's arrest.  Upon learning this information, Hagler immediately directed Officer Johnson (who had not yet left the scene) to release Plaintiff and return all of his possessions to him (including Plaintiff's weapon and vehicle).  Plaintiff was released promptly, albeit about an hour after Plaintiff was informed that he was being held on the Warren warrant and about two hours after initially being placed in Officer Johnson's patrol car.

3

Plaintiff claims he suffered cuts, bruises and swelling to his wrist that were inflicted as a result of the handcuffs being too tight, but he did not seek any treatment for these injuries. Photographs taken a week after the incident show scabs on his wrists. At some point after his release, Plaintiff was visited by a uniformed City police officer. That police officer allegedly advised Plaintiff to file a complaint against Hagler. Plaintiff went to the City Police Department and attempted to file a report. Plaintiff was advised that he could not file a report against Hagler at that time, but Plaintiff was advised that he could file a complaint with the City Ombudsman's office, the State Police or the Mayor's office. Plaintiff immediately filed a complaint with the City Ombudsman's office, and he subsequently filed a complaint with the Police Department. After an investigation by the City Ombudsman's office, Hagler was not disciplined in any manner.

On February 21, 2008, Plaintiff filed an eight count Complaint in Genesee County Circuit Court, wherein he alleged that the City and Hagler deprived him of certain of his statutory and Constitutional rights. On April 14, 2008, Defendants removed the action to this Court. This Court remanded Counts I-III (False Arrest, False Imprisonment and Violation of the Michigan Constitution) to the Genesee County Circuit Court and retained jurisdiction over Count IV (Violation of the Fourth Amendment); Count V (Violation of the Fifth Amendment); Count VI (Violation of the Fourteenth Amendment); Count VII (Vicarious Liability); and Count VIII (Violation of 42 U.S.C. § 1983). Plaintiff claims he suffered damages as a result of the incident, including but not limited to lost wages, medical bills and physical injury to his wrist as a result of the handcuffs being too tight.

### III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence

4

favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

### A.    Claims Against the City

In Count VII, Plaintiff asserts that the City is vicariously liable for the alleged unlawful arrest and detention of Plaintiff. In his 42 U.S.C. § 1983 claim alleged in Count VIII, Plaintiff asserts that "Defendants acting under color of state law subjected the Plaintiff to false arrest and imprisonment without probable cause" and "failed to afford the Plaintiff the same protection from false arrest as it provides to African Americans." For purposes of this Opinion, the Court will assume, without deciding, that Plaintiff has a clearly established right to the foregoing protections.

A municipal or governmental entity defendant can be found liable for the violation of a constitutionally protected right only if the plaintiff can establish that an officially executed policy,

or the toleration of a custom of such municipality or governmental entity, leads to, causes or results in the deprivation of such rights. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Therefore, Plaintiff must not only identify a policy or custom, he must connect the policy or custom to the City and show causation between the particular injury and the execution of that policy or custom. *Garner v. Memphis Police Dept., on remand,* 8 F.3d 358, 364 (6th Cir. 1993). *Respondeat superior* is not available as a theory of recovery in a Section 1983 action. *Monell*, 436 U.S. at 690-91. Accordingly, in order to have a viable action against the City, Plaintiff must demonstrate that the City itself is the wrongdoer. *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).

In this case, Plaintiff failed to allege, and has offered no evidence, that (1) there is a specific policy or custom of the City that led to the alleged constitutional violations, or (2) the policy or custom of the City resulted in the deprivation of any alleged constitutional rights. At most, Plaintiff has alleged that various individuals acted or failed to act. Actions or inaction on the part of some individuals, without more, does not constitute a policy or custom of the City for which the City may be liable. *Monell, supra*. Finally, neither Plaintiff's Complaint nor his response to the City's Motion for Summary Judgment contain any allegations or evidence that establish a causal link between a policy or custom of the City and the alleged deprivation of his constitutional rights.

For the reasons stated above, the Court concludes that Plaintiff has failed to allege or offer evidence to support a viable claim against the City. Accordingly, the Court hereby grants the City's Motion for Summary Judgment on Counts VII and VIII of Plaintiff's Complaint.

## B.   Claims Against Hagler

### 1.   *Official Capacity*

Hagler asserts, and Plaintiff acknowledges, that any claims against Hagler in his official capacity must be treated as a suit against the City itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). As discussed above, all claims against the City have been dismissed. Accordingly, any claims against Hagler in his official capacity, including without limitation, Count VIII (a loosely pled claim the Court interprets as an

alleged violation of the Fourteenth Amendment Equal Protection Clause), are dismissed for the same reasons.[1]

Accordingly, the Court grants Hagler's Motion for Summary Judgment with respect to Count VIII.

2.   *Individual Capacity*

Hagler also argues that Plaintiff's Complaint fails to specify that Hagler is being sued in his individual capacity. In the Sixth Circuit, absent an express indication that a defendant is being sued in his individual capacity, the Court is to assume the defendant is being sued solely in his official capacity as an employee of the governmental entity. *See Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). Hagler therefore argues that Plaintiff's entire complaint should be dismissed because Hagler is not liable in his official capacity. In his response brief, Plaintiff seems to concur with Hagler's assessment when he answered Hagler's first "Issue[] Presented" (the only place Plaintiff addressed the issue). Plaintiff's response brief states:

## ISSUE[S] PRESENTED

I.      Whether Plaintiff has sued Defendant[] Hagler only in his official [c]apacity.

| | |
|---|---|
| Plaintiff's Answer: | Yes |
| Defendant[] Hagler's Answer[] | Yes |

In reviewing Plaintiff's Complaint, the Court agrees with the parties that Plaintiff never expressly stated that he is suing Hagler in his individual capacity. Based on the Sixth Circuit case law interpreting *Wells* (and notwithstanding Plaintiff's answer set forth above), however, the Court concludes that Plaintiff's inartfully pled Complaint alleges that Hagler is being sued in his individual capacity. First, the majority of the paragraphs of the Complaint allege wrongdoing by Hagler as a

---

[1] The Court also notes that, to the extent that Count VIII can be construed as presenting a viable claim against Hagler in his individual capacity, Plaintiff has offered absolutely no evidence (or even argument) that would demonstrate that Hagler treated Plaintiff (a Caucasian) any differently than Hagler would treat an African-American under like circumstances. Accordingly, the Court also grants Hagler's Motion for Summary Judgment as to Count VIII to the extent that Count VIII sufficiently pleads a viable claim against Hagler in his individual capacity.

patrol officer making an "unlawful arrest" rather than in his function as "acting Police Chief" for the City (notwithstanding the caption of the case). Such allegations focus on the conduct and actions of Hagler himself, not the fulfillment of his duties as acting Police Chief. It is clear that Plaintiff is not alleging wrongdoing by the City in any paragraphs in Counts I-VI (except possibly Paragraphs 5 and 20). Second, in Paragraph 27, Plaintiff alleges that the "arrest" by Hagler "was unlawful and in bad-faith[.]" Third, at the conclusion of each of Counts II-VI of the Complaint, Plaintiff requests an award of damages against only one Defendant ("Plaintiff respectfully requests this Court to enter an award for the Plaintiff and against the Defendant"). Significantly, only Hagler was identified as a Defendant in Counts II-VI. Finally, Plaintiff's claims against the City focus on vicarious liability. In other words, such liability stemmed from the actions of one of its agents or representatives, in this case the actions of Hagler.

For the above reasons, the Court concludes that Plaintiff sufficiently alleged individual liability of Hagler such that this matter should not be dismissed for failure to sue Hagler in his individual capacity. *See Abdur-Rahman v. Mich. Dept. of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995); *Perry v. Croucher*, 165 F.3d 28 (6th Cir. 1998) (Table), 1998 WL 661151 at **8.

3.    *Count IV - Fourth Amendment*

Hagler argues that he is entitled to summary judgment on the basis of qualified immunity. The qualified immunity doctrine provides that government officials performing discretionary actions are shielded from civil damages liability as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects all but the "plainly incompetent" or those who "knowingly violate the law." *Id.* at 229.

The Supreme Court has repeatedly held that the plaintiff has the ultimate burden of proof to show that a defendant is not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991), *cert. denied,* 113 S. Ct. 1848 (1993). In *Hunter* v. *Bryant*, 502 U.S. 224, 227-28 (1991) (citations omitted), the

8

Supreme Court stated:

> First, . . . immunity ordinarily should be decided by the court [and not the jury] long before trial. Second, the court should ask whether the agent acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the event can be construed five years after the fact.

To determine if qualified immunity attaches, the Court must employ the two-part test set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The Court first must determine whether the alleged facts, taken in a light most favorable to Plaintiff, are sufficient to make out a Constitutional violation. *Id*. at 201. The Court finds that Plaintiff has asserted facts sufficient to demonstrate a violation of his Constitutional rights, namely the rights to be free from an unreasonable seizure of his person and an unreasonable search of his vehicle. Where the Court determines that a Constitutional violation occurred, "the next, sequential step is to ask whether the right was clearly established." *Id*. With respect to this second inquiry, the Supreme Court has stated:

> The determination as to whether the right was "clearly established" is a determination that "must be undertaken in light of the specific context of the case, not as a broad general proposition." In other words, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202 (internal citations omitted).

The qualified immunity analysis recognizes that reasonable mistakes may be made regarding the legal constraints on particular police conduct. If the officer's mistake is reasonable, then qualified immunity applies. *Saucier*, 533 U.S. at 205-06. Thus, "[i]f officers of reasonable competence could disagree, immunity should be recognized." *Harlow,* 457 U.S. at 341. "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter,* 502 U.S. at 229. In *Saucier, supra,* the Supreme Court held:

9

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to qualified immunity.

*Saucier*, 533 U.S. at 205.

In this case, Hagler had no reasonable basis for questioning Plaintiff when Plaintiff pulled into his friend's driveway. It is undisputed that Plaintiff had not committed any traffic offense, nor has Hagler demonstrated that Plaintiff was engaged in any activity that could constitute the impersonation of a police officer. Plaintiff was simply driving a car he legally purchased,[2] and he was on private property, with consent. Hagler, on the other hand, did not have consent to be on the property. Accordingly, Plaintiff has demonstrated, and the Court concludes, that "it would be clear to a reasonable officer that [Hagler's] conduct was unlawful in the situation [Hagler] confronted" when stepping out of his car to question Plaintiff. The Court therefore concludes that Hagler is not entitled to qualified immunity with respect to questioning Plaintiff.

The Court also concludes that Hagler is not entitled to qualified immunity with respect to the detention and handcuffing of Plaintiff or the search of Plaintiff's vehicle. Once again, Plaintiff had not committed any crime, nor had he behaved in a manner which was threatening to Hagler or anyone else. Rather, Plaintiff did exactly what he was legally obligated to do under the circumstances. *See* M.C.L.A. 28.425f (3) ("An individual licensed under this act to carry a concealed pistol and who is carrying a concealed pistol and who is stopped by a peace officer shall immediately disclose to the peace officer that he or she is carrying a pistol concealed upon his or her

---

[2]This case exemplifies a problem that the Michigan State Police and/or the Michigan Legislature should address promptly. It is absurd that a person who legally purchases an ex-MSP vehicle at an auction could be subject to law enforcement surveillance or stops because of the vehicle purchased. This happens, of course, because there (apparently) is no requirement that such vehicles be stripped of all MSP identifiers or, perhaps more importantly, that the vehicles be repainted in a color other than the very distinct blue that is unique to MSP vehicles.

person or in his or her vehicle."). First, Plaintiff immediately (and truthfully) told Hagler that he (Plaintiff) had a gun in the Tahoe and that he (Plaintiff) had a CCW permit for the gun. Plaintiff did not act secretly or deceptively in order to hide that he had the gun. Second, Plaintiff neither reached for the gun or suggested in any manner that he intended to use the gun. Thus, although Plaintiff told the truth, obeyed the law and was doing nothing wrong, Hagler handcuffed and detained Plaintiff, then ordered a search of his car. For those reasons, the Court finds that Plaintiff has demonstrated that no reasonable officer would have conducted herself or himself the same way as Hagler under the circumstances. Accordingly, the Court holds that Hagler is not entitled to qualified immunity with respect to handcuffing and detaining Plaintiff.

Finally, as to Plaintiff's claim that Hagler used excessive force in handcuffing him, the Court finds that Hagler is not entitled to qualified immunity. *See Vance v. Wade*, 546 F.3d 774, 783 (6th Cir. 2008) (holding that "for an excessive-force-in-handcuffing claim, our cases require that a plaintiff show both that officers handcuffed the plaintiff excessively and unnecessarily tightly and that officers 'ignored the plaintiff's pleas that the handcuffs were too tight'") (citations omitted). Here, Plaintiff complained to Hagler that the handcuffs were put on too tightly (and Plaintiff repeated this complaint to Officer Johnson). Plaintiff also testified at his deposition that the handcuffs were flush against his wrist bone and that he could not even turn his wrists in them, but neither Hagler nor anyone else loosened the handcuffs when he complained. Therefore, the Court finds this case analogous to *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002), where qualified immunity was denied to officers who handcuffed a person "excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight."

For the reasons set forth above, the Court holds that Hagler is not entitled to qualified immunity: (1) with respect to Plaintiff's claims that his Fourth Amendment rights were violated when Hagler stopped Plaintiff, then handcuffed and detained Plaintiff and caused Plaintiff's vehicle to be searched, or (2) with respect to Plaintiff's excessive force claim. Therefore, Hagler's Motion for Summary Judgment is denied with respect to Count IV.

    4.       *Counts V (Fifth Amendment) and VI (Fourteenth Amendment)*

Plaintiff's allegations that Hagler violated Plaintiff's Fifth Amendment rights (Count V) and Fourteenth Amendment rights (Count VI) when arresting Plaintiff without probable cause are subject to dismissal. The Fifth Amendment due process clause upon which Plaintiff relies is applicable only to actions by the federal government and its representatives. *See Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). As Hagler is not a federal employee, Plaintiff's Fifth Amendment claim is without merit.

In addition, the Sixth Circuit has held that a plaintiff's claim that he has been subjected to some deprivation without due process under the Fourteenth Amendment must be dismissed because "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 313 (6th Cir. 2005). Accordingly, in this case involving alleged Fourth Amendment violations, Plaintiff's Fourteenth Amendment claims must be dismissed.

For the foregoing reasons, the Court grants Hagler's Motion for Summary Judgment with respect to Counts V and VI.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant City of Flint's Motion for Summary Judgment is GRANTED and Defendant Gary Hagler's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. As set forth above, Counts I-III of Plaintiff's Complaint were dismissed previously because they are state law claims. As set forth herein, the Court has now also dismissed Counts V-VIII of Plaintiff's Complaint. Therefore, only Plaintiff's Fourth Amendment claim in Count IV remains before this Court.

The parties shall appear before the Court on August 13, 2009, at 10:30 a.m. for the Final Pre-Trial Conference on this matter and shall bring with them joint jury instructions and the Joint Final Pre-Trial Order, in accordance with the instructions set forth in the Scheduling Order issued by the Court.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  July 10, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 10, 2009.


S/Marie E. Verlinde
Case Manager
(810) 984-3290

13